1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| 9  JERRY CARMAN, | NO.  C10-5415-RSM-JPD |
| 10                    Plaintiff, | |
| 11        v. | REPORT AND |
| 12  MICHAEL J. ASTRUE, Commissioner of | RECOMMENDATION |
| 13  Social Security, | |
| 14                    Defendant. | |

15

16        Plaintiff Jerry Carman appeals the final decision of the Commissioner of the Social

17  Security Administration ("Commissioner") which denied his applications for Disability

18  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

19  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

20  administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

21  the Commissioner's decision be REVERSED and REMANDED.

22                          I.        FACTS AND PROCEDURAL HISTORY

23        Plaintiff is a 56 year old man with a high school education.  Administrative Record

24  ("AR") at 77.  His past work experience includes employment as a painter.  AR at 77.  Plaintiff

25  was last gainfully employed in 2004.  AR at 19.

26

REPORT AND RECOMMENDATION - 1

On February 24, 2006, plaintiff filed a claim for SSI payments.  AR 59-60.  On February 24, 2006, he filed an application for DIB, alleging an onset date of March 31, 2004.  AR at 56-58.  Plaintiff asserts that he is disabled due to lumbar degenerative disc disease, cervical degenerative disc disease, history of bowel problems with bowel obstruction status post resection, major depressive disorder, and alcohol abuse.  AR at 19.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 626-27.  Plaintiff requested a hearing which took place on February 15, 2008.  AR at 632-50.  On May 19, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform jobs existing in significant numbers in the national economy.  AR at 28-29.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 8-10, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On June 14, 2010, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may

neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Carman bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g);

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

*Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On May 19, 2008, the ALJ issued a decision finding the following:

1.   The claimant met the insured status requirements of the Social Security Act through March 31, 2004

2.   The claimant has not engaged in substantial gainful activity since March 31, 2004, the alleged onset date.

3.   The claimant has the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, history of bowel problems with bowel obstruction status post resection, major depressive disorder, and alcohol abuse.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds.  The claimant can stand and/or walk for about six hours in an eight hour workday and sit for about six hours in an eight hour workday.  The claimant can occasionally stoop, kneel, crouch, crawl and climb ramps and stairs.  The claimant can never climb ladders, ropes, and scaffolds.  The claimant can frequently balance.  The claimant should avoid concentrated exposure to hazards and vibration.  The claimant can perform simple, repetitive tasks.

6.   The claimant is unable to perform any past relevant work.

7.   The claimant was born on XXXXX, 1955[2] and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  On XXXXX, 2005, the claimant turned 50 which is an individual closely approaching advanced age.

8.   The claimant has at least a high school education and is able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

---

[2]  The date is deleted in accordance with Local Rule CR 5.2.

that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2004 through the date of this decision.

AR at 19-30.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err in his evaluation of the medical opinions of examining psychologist Terilee Wingate, Ph.D., treating physician Craig Southwell, M.D., treating orthopedist Rajeesh G. Arakal, M.D., non-examining physician Lavanya Bobba, M.D., and non-examining psychiatrist Marina C. Vea, M.D.?

2.   Did the ALJ err by rejecting "other source" testimony from Diane Dewell, ARNP, and Nancy Armstrong, ARNP?

3.   Did the ALJ err by failing to address the observations of a Social Security Administration employee?

4.   Did the ALJ properly assess plaintiff's RFC?

5.   Did the ALJ properly apply the Medical-Vocational Guidelines at step five?

Dkt. No. 16 at 13-22.

## VII.   DISCUSSION

A.   Evaluation of Medical Opinion Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; 20 C.F.R. § 404.1527(d)(1)-(2). "Likewise, greater weight is accorded to the opinion of an examining physician than a non examining physician." *Andrews*, 53 F.3d at 1041. However, under certain circumstances, a treating or examining physician's opinion can be rejected,

REPORT AND RECOMMENDATION - 6

whether or not that opinion is contradicted by other medical evidence of record.  *Magallanes*, 881 F.2d at 751.  The ALJ must give clear and convincing reasons for rejecting a treating or examining physician's opinion if that opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Id.*

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d at 957; *Orn*, 495 F.3d 625, 632-33 (9th Cir. 2007).

In this case, plaintiff argues that the ALJ erred in his assessment of the opinions of examining psychologist Terilee Wingate, Ph.D., treating physician Craig Southwell, M.D., treating physician Rajesh G. Arakal, M.D., and the state agency doctors.  Dkt. 12 at 13-14.

1.   *The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the Opinion of Examining Psychologist Terilee Wingate, Ph.D.*

Examining psychologist Terilee Wingate, Ph.D., performed two psychological evaluations of the plaintiff for the Department of Social and Health Services ("DSHS").  On February 21, 2007, she diagnosed plaintiff with Major Depressive Disorder, recurrent, severe; Post Traumatic Stress Disorder ("PTSD"); and rule out Bipolar Disorder.  AR at 537.  In addition to obtaining a history from plaintiff, Dr. Wingate conducted a Mental Status Examination ("MSE"), the Beck Anxiety Inventory ("BAI"), the Beck Depression Inventory II ("BDI"), and the Rey-15 Item Memory Test.  AR at 540-46.  She reported a Global Assessment of Functioning ("GAF") score of 45.[3]  AR at 542.  She opined that plaintiff had marked limitations in his ability to learn new tasks, interact appropriately in public contacts, and respond appropriately to and tolerate the pressures and expectations of a normal work setting.  AR at 538.

_____

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).  A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job.  *Id.*  A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood."  A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas."  *Id.*  A GAF score of 11-20 indicates "[s]ome danger of hurting self or others," or occasionally failing to "maintain minimal personal hygiene," or "gross impairment in communication."  *Id.*

REPORT AND RECOMMENDATION - 8

On January 25, 2008, Dr. Wingate performed a second psychological evaluation of the plaintiff.  AR at 569-77.  She noted that plaintiff had a "psychotic episode" one week ago, during which he was brought to the emergency room by the Olympia Police Department after he called 911 and reported having audiovisual hallucinations.  AR at 556-68.  Dr. Wingate diagnosed plaintiff with Bipolar Disorder, Type I, manic with psychotic symptoms; and PTSD.  AR at 570.  Dr. Wingate again conducted a MSE, BAI, and BDI.  AR at 573-77.  She assessed a GAF score of 20, due to his psychotic episode, and opined that he had severe limitations in his ability to exercise judgment and make decisions, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior.  AR at 571, 576.

Plaintiff argues that the ALJ erred in failing to mention his PTSD and bipolar disorder at step two.  Dkt. No. 12 at 14-15.  Plaintiff contends Dr. Wingate opined that his PTSD and bipolar disorder caused severe limitations, which "would certainly meet the *de minimis* test if Dr. Wingate is an acceptable medical source and her opinion is valid."  *Id*. at 14.

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-54).

The ALJ gave Dr. Wingate's opinion "little weight" on the grounds that it was "not consistent with the other objective medical evidence," and because it was based on plaintiff's subjective reporting of his symptoms.  AR at 26.  The ALJ noted that "Dr. Wingate was not a

1  treating provider and the claimant was not honest with her regarding his alcohol use." *Id*. These

2  are not specific and legitimate reasons to reject Dr. Wingate's opinion.

3        First, the ALJ rejected Dr. Wingate's opinion without identifying the "objective medical

4  evidence" that contradicts her opinion. "[C]onclusory reasons will not justify an ALJ's rejection

5  of a medical opinion." *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir.

6  1999).

7        Second, the ALJ rejected Dr. Wingate's opinion because it was based on plaintiff's self-

8  reports which the ALJ determined not to be credible. Where medical reports are based solely on

9  a claimant's self-reports, it may be reasonable for an ALJ who finds the claimant not credible to

10 question the reliability of the medical reports. *See Brawner v. Sec. of Health & Human Serv.*,

11 839 F.2d 432, 434 (9th Cir. 1988). Here, however, there is no indication that Dr. Wingate's

12 diagnoses of PTSD and bipolar disorder were based solely on plaintiff's self-reports. To the

13 contrary, like other mental health professionals, Dr. Wingate performed mental status

14 examinations. AR at 540-46, 573-77. She also utilized her own professional judgment about

15 plaintiff's mental health problems. There is no evidence Dr. Wingate was merely parroting

16 plaintiff's views about the degree of his impairment. The ALJ's implication that Dr. Wingate's

17 opinion may have been distorted by plaintiff's alcohol use is based on speculation and does not

18 amount to substantial evidence. *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

19       The Court agrees with plaintiff that the ALJ erred by failing to provide specific and

20 legitimate reasons for rejecting Dr. Wingate's opinions. On remand, the ALJ should reevaluate

21 the opinion of Dr. Wingate, and provide specific and legitimate reasons if he chooses to reject it

22 again.

23            2.    *The ALJ Provided Specific and Legitimate Reasons for Rejecting the*
                    *Opinion of Treating Physician Craig Southwell, M.D.*

24       Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for rejecting

25 the opinion of his treating physician Craig Southwell, M.D. Dkt. No. 12 at 16. Dr. Southwell

26 treated plaintiff for low back pain from June 22, 2005, to September 23, 2005, following an

REPORT AND RECOMMENDATION - 10

injury carrying five-gallon buckets of paint while on the job.  AR at 304-10.  Dr. Southwell diagnosed plaintiff with lumbosacral sacroiliac ("SI") joint sprain with restricted motion, instability in his left hip, and a L4-L5 disc protrusion.  AR at 304.  He opined that plaintiff was unable to work between June 22, 2005, and October 21, 2005.  AR at 305, 307, 310.  He prescribed 12 sessions of manual therapy and pain medication.  AR 306.

On September 23, 2005, Dr. Southwell met with a Washington State Department of Labor & Industries vocational counselor and provided his opinion regarding plaintiff's ability to return to work.  AR at 304.  Dr. Southwell opined that plaintiff would be unable to return to his prior work which required lifting 65 pound buckets of paint, climbing, bending, and twisting.  AR at 304.  Dr. Southwell noted that "[t]here was also a restricted duty position, which required much less activity."  *Id*.  He stated that if plaintiff "could change position as needed, he could start at approximately two hours per day."  *Id*.

The ALJ noted that at the time of Dr. Southwell's September 2005 opinion, he had not treated plaintiff since August 12, 2005, and plaintiff had not yet begun physical therapy because of his intestinal problems.  *Id*.  Plaintiff began physical therapy on September 21, 2005, and was discharged on October 3, 2005.  AR at 311-18.  The ALJ noted that on October 3, 2005, plaintiff reported that he was feeling better and that his pain had decreased to a 3 out of 10.  AR at 24, 311.  The ALJ found Dr. Southwell's opinion "cannot be credited as a permanent restriction to two hours of work," noting that such a restriction "in the context of this case, [would] be so exaggerated as to be improbable."  AR at 24.

Although the ALJ agreed that plaintiff was unable to return to his past relevant work as a painter, the ALJ appropriately clarified that Dr. Southwell's opinion was not a *permanent* restriction to *two hours of work per day*.  While Dr. Southwell unequivocally stated that plaintiff was "permanently not able" to return to his prior work as a painter, he only stated that plaintiff could "start" back to work at a restricted duty position approximately two hours per day so that he could attend physical therapy.  AR at 304.  Dr. Southwell's statements do not, as plaintiff

argues, indicate that his restriction to two hours of work per day was intended to be a permanent restriction to any work at all exertion levels.  Moreover, as the ALJ noted, at the time plaintiff had not yet undergone physical therapy which improved his low back pain.  AR at 24, 311.

Plaintiff argues that the MRI results show that his lumbar impairment is permanent.  Dkt. No. 17 at 6.  While the MRI results document that plaintiff suffers from a back condition, it is undisputed that plaintiff has a back impairment.  AR at 19, 354-55.  The MRI of the lumbar spine showed mild to moderate disease but no medical evidence was offered that suggested his impairment *permanently* precluded plaintiff's ability to work beyond two hours per day.  The ALJ reasonably concluded that a "permanent restriction" to two hours of work per day would "be so exaggerated as to be improbable."  *Rollins v. Massanari*, 236 F.3d 853, 856 (9th Cir. 2001) (finding the ALJ properly determined that the treating evidence did not support the physician's extreme recommendations).

It is the role of the ALJ to determine credibility, resolve conflict in medical opinions, and resolve ambiguities.  *Andrews*, 53 F.3d at 1039.  The role of this Court is limited.  As noted above, when the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Thomas*, 278 F.3d at 954.  Although the interpretation of the record urged by plaintiff may be theoretically possible, it simply cannot be said that plaintiff's view of the evidence is the only rational interpretation.  Accordingly, the Court concludes the ALJ did not err in evaluating Dr. Southwell's opinion.

> 3.    *The ALJ Properly Evaluated the Opinion of Treating Orthopedist Rajesh G. Arakal, M.D.*

Rajesh G. Arakal, M.D., treated plaintiff for low back pain from February 27, 2006, through November 29, 2006.  AR at 358-69.  He diagnosed plaintiff with degenerative disc disease, with sacralization of L5, and lumbar spondylosis.  *Id*.  On February 27, 2006, Dr. Arakal observed that plaintiff had lumbar weakness with lumbar spasm, and weakness in his lower extremities.  AR 362.  Plaintiff had negative straight leg raise bilaterally with no clonus on either

side.  *Id*.  He ordered an epidural steroid injection at the L5-S1 level, which did not provide relief.  AR at 361-62.  On May 8, 2006, Dr. Arakal noted that he did not believe spine surgery would help plaintiff, but recommended an "aqua therapy program with progressive strengthening and conditioning with trunk stabilization modalities and work conditioning program, as well as a home program."  AR 361.  On July 17, 2006, Dr. Arakal found that plaintiff's motor strength was 5 out of 5, and he had negative straight leg raise on either side.  AR at 360.  He recommended that plaintiff continue physical therapy for another six weeks, and noted that he "would like to start him on some light sedentary work at the next visit."  *Id*.  On August 28, 2006, Dr. Arakal ordered a second epidural injection after plaintiff presented with radicular pain down his legs.  AR at 359.  Dr. Arakal noted, "[h]opefully we can get him into some light sedentary work."  *Id*.

At plaintiff's last visit on November 29, 2006, Dr. Arakal found that plaintiff had good strength in his lower extremities, negative straight leg raise, and no evidence of clonus.  AR at 358.  Dr. Arakal noted that plaintiff did not have any radicular pain down his legs and that "[h]e is planning on starting work at the start of the year."  *Id*.  Dr. Arakal discussed with plaintiff that he did not think he needed another epidural injection, but that he "would be happy to see him if he has any worsening of his symptoms."  *Id*.

The ALJ gave "significant weight to the lack of significant objective findings that were found by Dr. Arakal."  AR at 24.  The ALJ wrote that Dr. Arakal "did not recommend surgery and appears to have believed that the claimant was able to work."  *Id*.  The ALJ noted that "[a] treating physician's opinion of nondisability is entitled to substantial weight."  *Id*. (citing *Crane v. Shalala*, 76 F.3d 252, 253 (9th Cir. 1996); and *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990)).

Plaintiff argues that Dr. Arakal limited him to "light sedentary work."  Dkt. No. 12 at 18.  He contends that "[i]f he is limited to sedentary level work, he is disabled upon proper

application of the [Medical-Vocational Guidelines ("the grids")], at least since his 50th birthday. 20 C.F.R. pt. 404, subpt. P, app. 2, Section 201.14." *Id*.

Contrary to plaintiff's contention, there is no indication that Dr. Arakal limited him to light sedentary work. AR at 358. Rather, Dr. Arakal's medical records from July and August 2006 indicate that he wanted to transition him back to work by starting him on light sedentary work. AR at 359-60. However, at his last appointment in November 2006, Dr. Arakal reported that plaintiff had good motor strength in his lower extremities, negative straight leg raises, no evidence of clonus, no radicular pain down his legs and he was planning on starting work in January. AR at 361. Dr. Arakal indicated that plaintiff did not need another epidural injection and there was no further treatment scheduled. *Id*. He stated he would be willing to see plaintiff if his symptoms worsened. *Id*. While Dr. Arakal's medical records document plaintiff's diagnosis and treatment, they do not show that Dr. Arakal limited plaintiff to sedentary work.

As the Commissioner argues, Dr. Arakal's recommendations were relatively conservative. Moreover, as the ALJ found, Dr. Arakal recognized that plaintiff had the residual capacity to work. *See Spradling v. Chater*, 126 F.3d 1072, 1075 (9th Cir. 1997) (finding "treating physicians and mental health professionals impliedly recognized [plaintiff's] residual capacities by suggesting he consider work retraining"); *see also Crane*, 76 F.3d at 253 (stating, "[a]t this point, I do not feel that the patient is totally permanently disabled"); *Curry*, 925 F.2d at 253 (stating that the plaintiff's mental state was "normal with the exception of intermittent signs of mild depression" and that he "should be fully employable"). It is the role of the ALJ to determine credibility, resolve conflict in medical opinions, and resolve ambiguities. *Andrews*, 53 F.3d at 1039. The Court finds the ALJ properly evaluated Dr. Arakal's opinion.

4. *The ALJ Erred in His Assessment of the Opinion of Non-Examining Physician Lavanya Bobba, M.D.*

On November 20, 2007, non-examining physician Lavanya Bobba, M.D., completed a RFC assessment. AR at 497-504. She found that plaintiff could lift and/or carry twenty pounds

occasionally and could lift and/or carry ten pounds frequently.  AR at 498.  She also found plaintiff could stand and/or walk for six hours in an eight hour workday and could sit for six hours in an eight hour work day.  *Id.*  In addition, she found plaintiff could frequently balance, and occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, rope, and scaffolds.  AR at 499.  The ALJ gave significant weight to Dr. Bobba's opinion, finding it "consistent with the objective medical evidence."  AR at 27.

Plaintiff claims that Dr. Bobba's RFC assessment was based on incomplete  medical evidence, and was therefore an insubstantial basis for the ALJ's decision.  Dkt. No. 12 at 19.  In her RFC assessment, Dr. Bobba checked off the box which indicated there were no treating or examining source statements regarding the claimant's physical capacities in the file.  AR at 503.  Plaintiff argues that this means Dr. Bobba did not review all of the medical evidence, including medical records from Dr. Southwell, Dr. Arakal, and Diana Dewell, ARNP.  Dkt. No. 12 at 19.  In addition, Dr. Bobba's RFC assessment made no reference to plaintiff's cervical degenerative disc disease, which the ALJ found to be a severe impairment and is documented in the medical record.  AR at 497.  Dr. Bobba's failure to identify plaintiff's cervical degenerative disc disease or note treating and examining source statements calls into question Dr. Bobba's opinion.  The ALJ should reconsider the weight assigned to Dr. Bobba's opinion because substantial evidence does not support it.

　　　　5.　*The ALJ Erred in His Assessment of the Opinion of Non-Examining Psychiatrist Marina C. Vea, M.D.*

On November 21, 2007, non-examining psychiatrist Marina C. Vea, M.D., reviewed plaintiff's case, and determined that plaintiff suffered from major depressive disorder.  AR at 505-28.  She determined that plaintiff had "sufficient ability to understand and remember simple instructions."  AR at 521.  She also determined that plaintiff had "sufficient ability to carry out short instructions, to perform activities with directions without additional support and to maintain attention in 2-hr increments."  *Id.*  Additionally, she found that plaintiff had "sufficient

ability to maintain socially appropriate behavior, accept instructions and respond appropriately to criticism for supervisors, to interact appropriately with the general public, . . . [and] sufficient ability to appropriately respond to changes in work setting." *Id*.  The ALJ assigned significant weight to Dr. Vea's opinion, finding it "consistent with the objective medical evidence."  AR at 27.

Plaintiff argues that Dr. Vea's opinion is inconsistent with Dr. Wingate's opinion and therefore does not constitute substantial evidence. Dkt. No. 12 at 20.  He contends that Dr. Wingate examined plaintiff twice and was privy to more recent medical evidence that was generated after Dr. Vea's report. *Id*.

The opinion of a nonexamining physician can amount to substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews,* 53 F.3d at 1041.  Dr. Vea's conclusion does not constitute substantial evidence in light of the conflicting observations and opinions of Dr. Wingate. *See Nguyen v. Chater,* 100 F.3d 1462, 1466 (9th Cir. 1996) ("In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record.").  Because the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Wingate's opinions, the ALJ should be required to reconsider both Dr. Wingate's and Dr. Vea's opinions on remand.

B.    The ALJ Properly Discounted Evidence from "Other Sources."

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such "non-medical" sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting

that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").[5]  If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony.  *Dodrill,* 12 F.3d at 919.

Plaintiff begins by arguing that the ALJ failed to provide "clear and convincing" reasons for rejecting the opinions of treating nurse practitioners, Diane Dewell, ARNP, and Nancy Armstrong, ARNP.  Dkt. No. 12 at 17.  Under the regulations, nurse practitioners are considered "other sources," not "acceptable medical sources."  *See* 20 C.F.R. §§ 404.1513(d)(1), (a). Accordingly, the ALJ could reject the opinions of Ms. Dewell and Ms. Armstrong for "reasons that are germane to each witness."  *Dodrill,* 12 F.3d at 919.

Ms. Dewell found that plaintiff was severely limited in his ability to work due to low back pain with radiation to his left leg, gastroesophageal reflux disease, rectal bleeding, depression, and incontinence.  AR at 373.  She noted that plaintiff was unable to sit, stand, or walk more than fifteen minutes at a time and must be able to move about frequently.  AR at 374. She recommended retraining, physical therapy, and evaluation by an orthopedic surgeon.  *Id.*

Ms. Armstrong opined that plaintiff was limited to sedentary work due to his degenerative joint disease, back pain, disc bulge, and depression.  AR at 550.  She found that plaintiff was limited by severe depression and delusions, and could not sit for long periods of

---

[5] Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

time.  AR at 549.  She recommended an orthopedic evaluation and surgery, physical therapy, and treatment at Behavioral Health Resources.  AR at 551.

The ALJ assigned little weight to their opinions because they were inconsistent with other medical evidence, they were undermined by the fact that plaintiff's gastrointestinal issues improved with medication, and they were internally inconsistent with their own recommendation that plaintiff increase his activity and retraining.  AR at 25.  Each of the ALJ's reasons is germane to each witness, and is therefore sufficient to reject their opinions.

First, the ALJ rejected  their opinions that plaintiff be evaluated by an orthopedic surgeon "which had already been done without significant findings."  AR at 25.  As indicated above, orthopedic surgeon Dr. Arakal found that plaintiff had the residual capacity to work.  Second, the ALJ found plaintiff's gastrointestinal issues were under good control.  AR at 25.  Inconsistency with medical evidence is a germane reason for rejecting lay witness evidence. *Bayliss,* 427 F.3d at 1218.  Third, the ALJ rejected Ms. Dewell's opinion because she recommended that plaintiff engage in vocational retraining to improve his employability.  AR at 25.  A health care provider's recommendation that a claimant consider work retraining shows a residual capacity to work. *See Spradling*, 126 F.3d at 1075.  The ALJ provided specific reasons germane to Ms. Dewell and Ms. Armstrong for discounting their testimony.

C.   The ALJ Did Not Err By Failing to Address Observations by a Social Security Administration Employee

Plaintiff argues that the ALJ erred by failing to address the "lay testimony" of T. Henagin, a Social Security Administration ("SSA") employee, who reported on a SSA Form that plaintiff was "slow moving/walking, alternated between sitting and standing."  AR at 96-8.  He argues that the Mr. Henagin's observations are consistent with the record evidence, and the ALJ's failure to consider it constitutes plain error.  Dkt. No. 12 at 18-19.

While observations by SSA employees are relevant as part of the overall evaluation of the credibility of a claimant's statements, they are not competent lay witness testimony. *See* 20

C.F.R. § 416.929(c)(3); SSR 96-7p ("Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements").  To qualify as a competent lay witness, a person must have sufficient contact with a claimant during the relevant time period.  *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (holding that sufficient contact with the claimant is required to render a lay witness competent to testify).  "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *see also Dodrill*, 12 F.3d at 916 ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition").

Here, Mr. Henagin met with plaintiff only once and did not observe his symptoms and daily activities over a period of time.  AR at 96-8.  He did not have sufficient contact with plaintiff during the relevant time period to qualify as a competent lay witness.  *See Crane*, 76 F.3d at 254.  The ALJ did not err in failing to address Mr. Henagin's observations.

> D.   Until the ALJ Has Properly Evaluated the Medical Opinion Evidence, the Court Cannot Evaluate the Adequacy of the RFC Assessment

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p at 1.  The RFC assessment must be based on all of the relevant evidence in the case record, such as:  medical history; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., side effects of medication); reports of daily activities; lay activities; recorded observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from work attempts; need for structured living environment; and work evaluations.  SSR 96-8p.

1    Because this case is being remanded for the reasons detailed above, the Court eschews a

2    detailed analysis of plaintiff's argument that the ALJ failed to include all of his limitations

3    imposed by his physical and mental impairments.  Dkt. 12 at 20-21.  On remand, the ALJ should

4    reevaluate the physical and psychological opinion evidence and reassess plaintiff's RFC.

5            E.       Remand Requires a Reevaluation of the Analysis at Step Five

6            Utilizing the Medical-Vocational Guidelines (commonly known as the "the grids") as a

7    framework, the ALJ found plaintiff capable of performing other work at step five.  AR at 28-

8    30.  Plaintiff argues that the ALJ should have called upon the services of a vocational expert

9    ("VE") instead of relying on the grids because his mental impairments were significantly

10   severe to preclude use of the grids.  Dkt. 12 at 21.

11           An ALJ may rely on the grids to meet his burden at step five.  *Burkhart v. Bowen*, 856

12   F.2d 1335, 1340 (9th Cir. 1988).  "They may be used, however, 'only when the grids accurately

13   and completely describe the claimant's abilities and limitations.'" *Id*.  (quoting *Jones v. Heckler*,

14   760 F.2d 993, 998 (9th Cir. 1985)).  "When a claimant's non-exertional limitations are

15   'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's

16   exertional limitations, the grids are inapplicable[]" and the testimony of a VE is required.  *Id*.

17   (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988));

18   *accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is required to seek the

19   assistance of a vocational expert when the non-exertional limitations are at a sufficient level of

20   severity such as to make the grids inapplicable to the particular case.")

21           "[T]he fact that a non-exertional limitation is alleged does not automatically preclude

22   application of the grids.  The ALJ should first determine if a claimant's non-exertional

23   limitations significantly limit the range of work permitted by his exertional limitations."

24   *Desrosiers*, 846 F.2d at 577 ("It is not necessary to permit a claimant to circumvent the

25   guidelines simply by alleging the existence of a non-exertional impairment, such as pain,

26   validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of

REPORT AND RECOMMENDATION - 20

the guidelines."); *accord Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) ("The regulations . . . explicitly provide for the evaluation of claimants asserting both exertional and nonexertional limitations. [20 C.F.R. Pt. 404, Subpt. P, App. 2] at § 200.00(e)."), *modified at* 794 F.2d 1348 (1986). "Nonexertional impairments may or may not significantly narrow the range of work a person can do." SSR 83-14. For example, in *Hoopai*, the Ninth Circuit found that substantial evidence supported the ALJ's conclusion that a claimant's depression, with evidence of various associated moderate limitations, was not a sufficiently severe non-exertional limitation prohibiting reliance on the grids without the assistance of a VE. *Hoopai*, 499 F.3d at 1076-77. By contrast, in *Tackett*, the Ninth Circuit found that a claimant's "need to shift, stand up, or walk around every 30 minutes [was] a significant non-exertional limitation not contemplated by the grids[]" and, therefore, that "mechanical application of the grids was inappropriate." *Tackett*, 180 F.3d at 1103-04.

Here, because the ALJ did not properly consider all of the medical evidence, it follows that the ALJ may have erred by relying upon the grids. Accordingly, on remand, the ALJ shall reconsider whether to obtain VE testimony after reevaluating the pertinent medical evidence and, if applicable, revising plaintiff's RFC. The ALJ shall then determine whether plaintiff's nonexertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by plaintiff's exertional limitations. If so, the ALJ shall solicit testimony from a VE at a new hearing.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 29th day of March, 2011.

James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21